Thurman, C. J.
The facts as shown by the record are these: December 30, 1853, the petitioner, Morris Sovereign, made an affidavit before a justice of the peace of Muskingum county, charging one Catharine Crawford with larceny; upon which a warrant issued, and she was arrested, and, after a hearing, recognized to appear .in the probate court of that county, to answer the charge. The ■prosecuting attorney filed an information, which Sovereign indorsed :as follows : “ I hereby acknowledge myself to be security for costs in this ease, in the event of the failure of the state in this prosecution ; and I do hereby undertake to pay whatever costs may accrue herein, in such event, to the state, February 1, 1854.
(Signed) “ M. Sovereign.”
*491 • February 6, 1854, tbe prisoner, being arraigned, pleaded “Not guilty,” and demanded a trial by jury; whereupon a jury of six men were impaneled, who, after hearing the case, returned a verdict of “ not guilty;” and, thereupon, she was discharged by the court. “ And it further appearing to the court that the prosecution was malicious and without probable cause, it was thereupon by the court ordered that the prosecutor, Morris Sovereign, pay the costs of the proceeding, taxed at forty-five dollars and thirty-four cents.”
The court of common pleas, upon error, affirmed this judgment against Sovereign, with costs; and the district court, upon error, affirmed the judgment of affirmance, with costs.
To reverse these several judgments against him, he now exhibits the present petition.
It is not pretended that the judgment complained of derives any support from Sovereign’s indorsement upon the information. No statute has been pointed out, nor have we discovered any, authorizing that indorsement; but if there were such a statute, *it would not avail the defendant in error, because, first, the judgment is not upon tbe indorsement; and, secondly, we find no jurisdiction conferred upon the probate court to render a judgment, much less a summai’y one, upon any such instrument.
The judgment was rendered in supposed compliance with the provisions of the 45th section of the probate court code, which reads as fallows:
“When the defendant is acquitted, either by the probate judge or by a jury, he shall be immediately discharged ; and if the probate judge certify in his minutes that the prosecution was malicious or without probable cause, he may order the prosecutor to pay the costs of the proceedings, and enter up judgment therefor, which may be enforced by execution.”
, With the policy of this law we, as a court, have nothing to do : but speaking for myself alone, I can not help remarking that it seems strange to me, that, in this humane and civilized age, our statutes create a direct pecuniary interest in the clerks and sheriffs who draw our juries, and by the latter of whom vacancies are filled with bystanders, and also in the worst class of prosecuting witnesses, namely, those suspected of malicious motives, to convict piersons accused of crime. To make the fees of clerks and sheriffs depend upon the conviction of the prisoner, and to increase *492 1be zeal of a prosecuting witness by threatening him with a judgment for the costs if there is a verdict for acquittal, has always appeared to me a strange mode of securing that impartial trial which both justice and the constitution imperatively require.. Nor have I been able to see that it is entirely consistent with the dignity of the state or the dictates of sound public polity, to carry on doubtful prosecutions at individual expense, and, because the state is idemnified from a paltry sum of costs, to place a citizen upon trial who would otherwise be suffered to go unmolested.
The argument of the plaintiff in error is, that Catharine Crawford was not acquitted by either the probate judge or a jury, and consequently the court had no authority to render a judgment against him.
*That she was not acquitted, within the meaning of the act, by the judge, is very evident; and that she was not acquitted by such a jury as the constitution contemplates, to wit, a jury of' twelve men, is decided by Work’s case, 2 Ohio St. 296. In that, case, it was held that the act under consideration, “ in so far as it provides for a jury of six only, and authorizes a conviction upon-their finding, js unconstitutional and void;” and that the probate -court, before the passage of the amendatory act of April 26, 1854-\Swan’a Stat. 7536), had no power to impanel a jury of twelve in a criminal case, is very apparent. The constitution secures the right of trial by such a jury, but does not execute itself; and no power could be derived by the court from the common law, because “ our courts have no common-law jurisdiction in criminal cases.” Winer v. The State, 10 Ohio, 345. It follows, that there was no-law in force when Catharine Crawford was tried, providing a constitutional jury to try her case.
But this, says Mr. Attorney-General, was a defect of which she alone had a right to complain, and if she waived her privilege, Sovereign, who is within the letter of the statute, can not insist, upon it. The statute provided for her trial by six men, and upon their verdict of acquittal, authorized a judgment for costs against him, if the prosecution was malicious or without palpable cause.
To this reasoning we can not assent. For myself, if the decision turned upon the question whether there was a waiver by the accused, I should hesitate a long time before answering that question in the affirmative. I do not clearly see how a prisoner can be said to have waived a trial by a jury of twelve, when no law had pro *493, 494 vided such a jury. But it is unnecessary to decide this question, for in our judgment, this case does not depend on it. It is sufficient, in our opinion, that the legislature intended to provide a constitutional tribunal for the trial of offenses, and as incident to a trial by such a tribunal, to authorize in certain cases a judgment for costs against the prosecuting witnesses. But failing in their main purpose — the tribunal provided not being - a ^compliance with the constitution — the incident, or minor purpose fails too. It sometimes happened that a clause in an act has been adjudged unconstitutional and therefore void, without affecting the remain-der of the act; but in no case, I imagine, has a provision wholly dependent upon the constitutional clause, been held to remain un.affected.
Catharine Crawford could not have been lawfully convicted by a jury of six, had she seen fit to object to that tribunal; and possibly •she could not whether she objected or not, no jn’ovision having been made for a constitutional jury. Shall we hold, that although she could not be thus convicted against her will, yet her acquittal by ■such a jury shall condemn a witness to a judgment for the costs? Were we to do so, the strange anomaly would be presented, of a law under which a witness could by no possibility convict the ac-cuscd, and might yet have to pay the costs in case of an acquittal.
The judgment of the district court must be reversed, and proceeding to render such judgment as that court ought to have rendered, we also reverse the judgments of the common pleas and probate courts.